for 237200 United States v. Edwards. Ms. Goldblatt, are you ready? Thank you. Good morning, Dana Goldblatt for Mr. Edwards. This is a case with two independent parts to it. The first part of the appeal is the 404B analysis, which is the admission into evidence of the fact that the defendant was, or evidence that the defendant was a drug dealer. Initially, this was briefed simply under 404B as there was not a proper purpose for the admission of this evidence and there was not proper notice. And then sort of incidentally on the fourth prong, that also, excuse me, it was more prejudicial than probative. But in the opposition, the government raised the point that this was, I'm sorry, and I just want to say I think that whether there was a proper purpose articulated and whether there was in fact proper notice under the rule is not really contestable on these facts. And the government raised the response that this was not in fact 404B notice, sorry, 404B evidence. And therefore, that whole analysis could be dispensed with because the evidence was necessary to complete the story of the crime. Now, this is a direct evidence argument, that this was not evidence of prior bad acts or prior uncharged criminal conduct, but that in fact the fact that there had been this narcotics involvement was direct evidence that the defendant possessed ammunition a year later. And regardless of whether – before I even get to whether the – Well, because we had testimony from the witness who said – about identifying him in the video, and the question is, well, how do you know him? And he came to my house. Why did he come to my house to do a drug thing with the person I live with? So then the idea is that it corroborates her testimony, right? Or it explains why that's the person in the video because he has – he would have a dispute with the person who gets shot because they're involved in drugs together. Yes, so that was the completing the story theory.  It wasn't a 404B theory. I don't think corroborating a witness's identification with extrinsic evidence of a conversation she had after the – she met the person with a different person, that's not usually part of identification procedures. So it wouldn't normally be admissible under – as identification. So, yes, that was the theory, right, that this is – completes the story of their interaction. Not the story of the crime now, but the story of how she knew him and why she might remember him. And one of the problems with using completes the story as direct evidence and moving it out of the 404B analysis is the stories require characterization. So completing the story will usually involve character descriptions, character evidence. Now you're admitting for character purposes in order to complete the narrative, make it more robust. Well, why did you remember him? Because he's such a bad guy, right? Of course, that's more vivid. It could also be just identity and motive, which is what the district court said. The district court – and this is actually getting to the second problem already now, assuming there had been proper notice, which there was not. So already this is – there was not proper notice. The defense counsel is blindsided by the fact that this would come into evidence. So he's now dealing with it on the fly and the judge says – The video was coming into evidence or the testimony about who's on the video? Either. That particular video had never been – in fact, on the – had never been noticed as 404B material. The drug video. The drug video, yeah. The shooting video, yeah. No, all the gun video. This is not about any of the gun evidence or any of the – this is just the video where it shows him packaging drugs. So there was no notice that there was going to be testimony that he was involved in a drug interaction with the victim. And there was no notice that there was going to be – no notice before trial that there was going to be evidence of these – the drug transaction – the drug handling on the video, on a video. So both of those were a violation of the rule of requiring notice. Was Ms. Bias listed on the witness list? Yes. Okay. So there was notice that she'd be testifying? Yes, there was notice that she would be testifying. And didn't that raise an issue of for what purpose would she testify other than to say she had seen Mr. Edwards when he came to the house or – Yes, and that testimony was not the subject of the objection. That was completely proper, that she would testify – So he was on notice, Ms. Bias would testify? Yes, yes, of course. That she would testify and that she would identify him. And why is that not sufficient notice? Can you tease that out? The 404B notice requires that the evidence – there be notice in writing before trial identifying the specific evidence that is going to be used to put forward the evidence of the prior uncharged criminal conduct. No, I understand what the rule requires. I'm trying to understand why listing her on the witness list would not be sufficient for notice. Why that? Because the notice requires that all four of those be addressed in writing. So there would have to be a writing that said she's going to testify about drugs, and this is why the drug testimony is relevant. But if the way that she knows him is because he came over to her apartment to do drugs, why isn't that part of the story about how she knows him? He didn't come over to the apartment to do drugs. He came over to the apartment to talk to her husband. But she testified that he did, right? No, her testimony was that she met him. Her husband introduced him. They had a brief conversation. She went into the back room, came back out. He left. Then she had this argument with her husband, why are you always bringing people to my house? And he told her, I'm doing a drug deal with this guy. That's why I'm bringing him to your house. Wasn't there just a question to her about why did you invite him to that house? And she says he came over to do a drug thing with the— Yeah, the drug thing was to discuss their business relationship about how they were doing what they were— apparently they were buying drugs on credit together. That was the testimony. And so he came over to sort of initiate the relationship. And her husband was very excited to be in this relationship where they were going to be buying this large quantity of drugs, or any quantity of drugs I guess, on credit. And they just—I guess they discussed it, but she wasn't there for the discussion. So all that happened was she met like a colleague of her husband's, and then afterward the husband says— I'm sorry. So is your position that she could explain the credit deal as an explanation for why she knows him and why he came over to her apartment or— No. She was not allowed to explain that? No, she was not allowed to explain that her husband later told her why he was at the apartment because it doesn't go to identification. How long he was there, any conversations she had with him, what he sounded like, what he looked like, all of those go to identification. Gossip afterward about what his business relationships are is not part of the identification and would very likely get into character evidence. However, it's being—it got sort of bootstrapped in through this direct evidence argument on the grounds of completes the story, which is very contested. And of course it completes the story because characterization like, and he's a drug dealer, is very vivid and compelling. And it clearly goes to motive. Assuming we were to disagree with you on notice, it clearly goes to motive, doesn't it? No. It does not. Here's why. They were in a friendly relationship a year before the shooting. To assume that—and drug dealers who are in friendly relationships and are part of the same criminal organization don't usually shoot each other. They shoot you when they have an argument subsequently. That's the problem. But that is a—that's character evidence about drug dealers, right? That's not— It's also direct evidence of—or circumstantial evidence of motive to commit. And otherwise, why would you shoot a friend? You have to have a motive to do that. And if the motive is we were friends, we were colleagues, the word you used, and then we had a falling out over something, that goes directly to motive, doesn't it? If there were evidence of a falling out, I think it would. But there was no evidence of falling out. The only evidence was that they were friendly and involved in— It doesn't have to be drugs, right? Like if somebody shoots somebody else and there's testimony that they were in business dealings together, that might also suggest a motive for the shooting. I mean I don't know if it's the character of drug dealers, but it would explain why somebody would be there to shoot the other person. I don't think that would work with stockbrokers, right? Like the reason he must have shot him is because they both worked for Merrill Lynch. All right, so I have a question about—I've got two questions, I guess, more. One is about the jury instructions. So the district court does say you may not consider that he likely committed the crime because he was predisposed to criminal conduct. There is a kind of odd instruction where he says you may only consider evidence of uncharged conduct as evidence of the motive in carrying out the charged crime, as evidence of the knowledge and intent in carrying out the charged crime. Those are 404B factors. But then any evidence of conduct that is inextricably intertwined with evidence of the charged conduct and evidence enabling you to understand the complete story. So I guess I have two questions about that. One is it's kind of odd to instruct the jury that you can consider it as evidence of conduct that's intertwined with the other evidence. That's usually a determination the district court itself makes that it's impossible to separate them. I don't know what a jury is supposed to do with the instruction that you can consider it as intertwined with other evidence. Do you have a view about that? Is that an odd instruction? I do have a view of that. I do think it's an odd instruction, and I think it was—and this is speculation on my part—a saving instruction. Because the actual ruling had been made wrongly. And so sort of like a humane practice instruction where you would give the jury then the instruction that they can— Well, it is true that evidence can be admitted if it's inextricably intertwined. That is a standard. He's just reciting the legal standard to the jury. Maybe it was weird to do that, but if he's right about that, then the instruction wouldn't be inherently problematic, would it be? If you were right about it, the instruction wouldn't be inherently problematic. It's a sign because it's so unusual that something has gone a bit awry if you're giving the equivalent of humane practice. Why isn't the instruction that you shouldn't consider it as evidence of predisposition sufficient to— It should have been, but there was no objection. What? It should have been. That would have been better, but there was no objection. And on its own, that jury instruction without objection, especially this late after the—this is the actual jury instruction days later. This is not a contemporaneous instruction. It wouldn't have fixed the problem. I guess I have another question, which is even if we think that there is an error in admitting the evidence, why isn't it harmless? So we have a video of somebody driving a Volkswagen SUV who gets out and shoots. We have two witnesses saying that Edwards is the shooter. We see the first three letters of the license plate, and it's the same. It's his car, which is also a Volkswagen SUV. And so why shouldn't we conclude that even if the drug evidence shouldn't have come in, the error would have been harmless? Because that video was—it definitely showed his car. No doubt that was his car. It was not good enough to show him, which is part of the—and I think this is in the record early on in the conversations pre-trial. Maybe it wasn't good enough to show him. I mean he was literally there, and we had two witnesses saying, I know him, and that's him. Well, those witnesses didn't actually know him. One had seen him for about 60 seconds a year ago, and the other one was a police officer. Misbiased, right? Yes, that's misbiased, yes. And the other one was the police officer who saw him 17 to 22 times. Yes, who said that he saw him 17 to 22 times. And you can see his height and his teeth and some other features. You can see height and teeth, yes. And the question is whether a jury, if they hadn't been instructed by two different people giving their opinion of what was on the video, would have agreed that it was him on the video. The argument relies on the idea that the witness testimony also shouldn't have been admitted. It doesn't rely on it. Because the witnesses plus the drug stuff might have affected the jury decision. I think the witnesses without the drug stuff would have been much less likely to affect the jury decision. And we have to go with let's do stockbrokers, right? Like I said, it's a different, without the prejudice of he's a narcotics person and narcotics people are naturally violent. That's just their character. But the jury can see the defendant, and the jury has the video. So the witnesses' identifications may assist the jury, but ultimately it's the jury who can look at the video and say they're out of their minds. This guy is five feet, looks like five feet, and doesn't look like the defendant at all. Or they can say, you know what? We're looking at this video. We see the defendant at trial. We get to decide the ultimate fact, and we believe it is him based on what we see on the video, what we see in the courtroom with their own eyes, assisted by the testimony of the eyewitness. Why is that so harmful then to the defendant for the jury to have heard about the context of his relationship with this individual? By the way, there were three individuals there, right? He shoots only the, allegedly shoots the victim. Right. There are a couple reasons. One is that usually when we put a fact in front of the jury and we ask them to find it, we don't also let a lot of other people come in and testify to their opinion about that fact. That happens all the time. You know, I was there, this was the person, and then video also comes in. That's for eyewitnesses. For eyewitnesses. Yes, if they were there. But either eyewitnesses on the scene or people who know the individual. But these weren't people who know the individual. These are people who have, in the place of the police officer, seen someone that someone said was the individual. It doesn't mean you have a relationship with the person. That's also a question of weight. It goes to weight. And the jury can, the defense can say, look, disregard their testimony because Ms. Bias only saw him once, by her own admission, for ten seconds. And this other police officer never actually had any interactions with him. I mean, but that all goes to the weight. Rather than addressing sort of I guess it's a policy question, I'm just going to address what Second Circuit law has on this issue, which is in my brief, because I feel there might be differences of agreement in policy. There are not differences of agreement about the law. So what Second Circuit precedent has said, and it departs from Ninth Circuit a little bit here, because the Ninth Circuit says if you weren't an eyewitness, you don't get to testify to your opinion about what's in the video, period. The video is the evidence in front of the jury, and if we let people do that, absolutely that's invading the province of the jury, which can happen even if the jury is the ultimate decider. So that's a no-no, Ninth Circuit. Second Circuit says, okay, we're going to let it happen on one condition, that there's something special about the insight that the person giving their opinion would have into helping with the identification. And the prototypical example of that was Watkins, which is this probation officer who knew the guy for a really long time, had hour-long conversations with him weekly, and in addition his – Why does the exposure to the defendant matter? Like why – doesn't that just go to wait? So if they are testifying based on their own observation, like it's not hearsay. Like they have seen him. They know what he looks like, right? So they're saying that looks like him and I know that because I'm familiar with him based on my experience. You can then say, well, you don't really have that much experience and maybe you're mistaken. I don't know, but that doesn't seem like that should disqualify the evidence. It does, and the reason that it does is because it's a little bit – it reminds me of somebody saying it's not hearsay. I heard him say it, right? They're testifying to what they heard, and if it's admitted for certain purposes, then it's invading the province of the jury. So yes, you can have somebody testify to whether this person – But there's no out-of-court statement that's being admitted for the truth of the matter asserted, right? So like what they're testifying to is I know this guy from this exposure to him. I'm watching the video right now. I believe that's him. Why? Because I recognize his teeth or height or gait or whatever. Because neither – They're testifying about their own firsthand observations, right? And they're in court. Like the conclusion that it's him is in court and subject to cross-examination. And Walker was about gait in part, and that's similar here. The officer said, well, there's the elbows out kind of walk. It seems quite similar. Well, the difference is – and this is a key difference – that in Walker, there is no doubt that the person that the witness is talking about, that they had this relationship with, is the defendant who's sitting in front of him. No doubt at all. Because they knew him very well. So there's no – you don't have to call it – you don't have to establish it as a foundation. You don't have to deal with it. It's just accepted. And in that situation, what you were talking about follows, right? In this case, we're dealing with two people, one of whom had never talked to the defendant and had only seen him at a distance and been told who he was by others. And another, we have a woman who met him for 60 seconds and is then told who the person she met was by her husband and thinks that that person is – So the principle that's distinguishing this from Walker is that the witness needs to have a longstanding relationship with the defendant? At least enough that we are 100% sure the person they're talking about that they saw previously is the defendant. Who's 100% sure? Yes. There should be – we shouldn't just be able to say, I'm pretty sure that I know – I think I met the defendant a year ago, and that looks like the guy I met a year ago. It's a triangulation. I suppose you would also say that even if the witnesses were properly admitted, there was an eyewitness who said, I know the defendant, and I was standing right there, and I didn't recognize the shooter, right? So you might say even with the witnesses, there was a kind of – the jury might have equivocated on whether it was him. Yeah. I think that the real thing that – but that witness was impeached with the fact that he was a narcotics dealer, and so the fact that he had these narcotics transactions made them not believe him. Well, that's allowed, right? Yes, of course. But it goes to – no, it's perfectly allowed, but it goes to the power of this narcotics testimony. But I understand your argument on the degree to which the witness knows the individual matters. I'm not sure it matters to what extent it matters for admission, particularly when it's one situation. If you have somebody come into court and say there's no video of the incident, and the person says, you know, I know – does some sort of identification without the jury being able to assess that by having the video themselves. And I think that makes a difference. It does and it doesn't. There's been so much evidence recently of all of these convictions being overturned through false eyewitness identifications because the juries credit them so strongly and also because – Right, because there's no video and it's just eyewitness identification versus a situation where the jury has the recording, if it's a voice, or the video itself and can make that assessment because they can see the person standing before them that's charged and determine whether it's the same person or not. We're getting outside the scope, but I should say that's not true, just as a matter of what the research shows. That's inaccurate. It's very easy to sway people in what they interpret in a video by what you tell them they're seeing. And there's a lot of studies on that, too, and this goes into a lot of this eyewitness identification stuff. Well, we're getting into the policy issues now. Right, and that's why I would encourage the court to go to the previous panels of the Second Circuit and what they've said, which is that the length of time and how well they know the person really, really matters, that that is an important factor in determining admissibility and that in terms of ID, it's very hard to impeach identification because juries just believe people who say they know people and it just feels so solid to them, and that's part of the reason that we're seeing so many districts and so many courts begin to really restrict what identification evidence can come in. And in the context of that, you've reserved a couple of minutes for rebuttal.  We'll hear from the government. May it please the court, Adam Amir, I represent the United States in this appeal, as I did in the trial below. As the colloquy has just demonstrated, we think appellants for or for be noticed argument fails for two independently sufficient reasons. And I'd like to first begin with Judge Menashe, your question, where you focused on the basis for this identification and the testimony about Mr. Edwards, the appellant, being involved in narcotics dealing. And you're absolutely right. That was that was important direct evidence because it demonstrated how Miss Baez knew this person when she testified that he was the individual as the shooter on the video. And I think if you if you go back to why I really demonstrate that, I mean, was it necessary to complete the story? I mean, why couldn't you just say I know him because he came over to my apartment to meet with my partner? It doesn't seem like it's actually intertwined with the story that she knows him from personal experience. I disagree, Your Honor. I think it was really important because why would she remember it otherwise? This was a very vivid experience for her because she came home and saw this individual with her romantic partner and she was upset. She said, why are you bringing this person into my house? And she remembered it vividly in court, even though it was six months before she remembered what he wore. She remember where he was in the house. And I think if you omit that fact, it it undermines her credibility. But it also speaks to a broader point, and that is this. Why does it undermine her credibility? It doesn't undermine her credibility because it's just omitted. It just doesn't bolster her credibility. Maybe credibility is not the right word. Maybe it would sanitize it to such a point that it would deprive the jury of critical context and context that is relevant here. Do you agree that it's not strictly intertwined? It is possible for her to testify that she interacted with him at her apartment without saying that he came to do drugs, right? That's not right, Your Honor. And if you look at cases like Mercado, which we cite in our brief from 2009, this court has admitted prior acts of, for example, gun sales between parties to show their participation in a narcotics conspiracy. Because those kinds of transactions explain the, quote, nature of the relationship of the parties. And I'm quoting what this court, district court, said at Appendix 90. I was trying to separate out intertwined from complete the story. Maybe you're saying there isn't a difference between them, but my thought is this is not intertwined. But you're sort of making a complete the story argument. Would you agree with that? I think that's fair. I think intertwined does come into play, especially when you're thinking about motive or intent for a crime. It is often the case that motive is not an element of a crime, but it is an essential part of the crime itself. And so I think that's what the court was getting at here when it instructed on that, when it reasoned on that on the record. And, you know, we also want to focus beyond just... It's not 404B evidence. I mean, I guess I just was struck by this. I don't know if it has any real implications. But isn't it weird that the district court instructed the jury that you should consider this as evidence of conduct that's intricately intertwined with any evidence of the charged conduct? What's the jury supposed to do with that instruction? I guess I don't find that strange only because the jury has to make that kind of same kind of determination with regard to uncharged conduct, whether it be completing the story or motive. I think that's a prime function for the jury. Obviously, the district court operates as an initial gateway. But once the court finds a basis for it, it's up to the, you know, it's fair to instruct the jury how they should use it. So the district court is basically telling the jury, I don't normally let in uncharged conduct, but I'm doing it here because I think it's intertwined with the story of the charged conduct. I don't read it that way. I think the court was just giving explanations for how to understand this evidence. And it's important to recognize, too, that the defense totally embraced this jury charge, I think, colorfully saying, I love the charge. And that was at, you know, transcript page 786. So I don't think there's a basis to challenge the jury charge. And in fact, the jury charge makes clear that the jury is not supposed to consider this for propensity evidence. You know, I hear my friend on the other side saying that this was all just propensity. And I think that's wrong. It was, I think the parties and the court were very careful to say, please don't consider this for any other purpose. How is it for motive, if not sort of through propensity? In other words, this is a drug deal, and drug dealers use gun violence. I mean, isn't that sort of the implied motive? I don't think so. I think that is a, that's perhaps one way to think of it. Motive also comes in in these types of cases because being involved in narcotics dealing often provides a motive to carry a firearm. And that is, I think, uncontroversial in this circuit. Obviously, you know, in cases like Santos, which we cite from 2008, there is an understanding that when you're in an illicit market, you can't resolve disputes or disagreements through resort to the courts or police. And so that it does explain a feature of that market. But even if you go away from why was he, why did Edwards, the appellant, shoot the victim? You can think about it in a different way, which is why, what is the motive for him to carry a firearm? And so that's another way that this comes in under motive. I think that totally avoids, remotely even, a propensity inference. I do want to get- To bring in the testimony from the witness that he came over to do drugs and whatever, was it really necessary to complete the story to show videos of him packaging drugs and having stacks of cash laid out in front of him? Yeah, I just, I want to be clear on what was admitted. There was just two videos. One showed the defendant packaging drugs and actually had a gun and ammunition on the same counter as the drugs. I mean, talk about showing how these are interconnected. And, in fact, there was a special agent from the ATF who identified that firearm as the exact same caliber used to shoot and kill the victim. So, just with that prelude, I do think it was important because in this case, the defense- You're looking to admit it identifies three videos and has these screenshots from it, but you're saying two videos were admitted? That's correct. We did not admit all of those videos. We, I think, wanted to take a more judicious approach by the time it came to the evidence. We noticed it in a motion in limine, mid-trial, but we did not admit all those three videos. We admitted government exhibits 1003 and 1011. And I do want to talk about, just briefly, the defense vigorously challenged by Bias' testimony to the point where, at Appendix 174, Transcript 587, the defense went so far as to claim that Ms. Bias had walked back her testimony, and that's a quote. And so we thought this was pretty essential because they basically- They had cross-examined her so vigorously that it was unclear if she stood by or it was really true that the defendant was a drug dealer, and that was the nature of his meeting and relationship with the victim. And so showing this kind of evidence was a clear way to corroborate what Ms. Bias said, and it completed the story because it showed that his possession of firearms was not disconnected from his involvement in narcotics dealing. I do want to get to, Judge Kahn, your point about notice. We think notice was- While we didn't necessarily serve a 404B notice that maybe complied with the rule, the defense certainly had actual notice of what was coming in. They had Ms. Bias' 3500 material, and they referenced that material. They said in their opening that Ms. Bias would be identifying- They didn't use her name, but they said the girlfriend of the victim would be identifying my client. That was in the opening statement on the first day of trial. And that was- You also see in Appendix 33, the defense counsel states on the record, I acknowledge receipt of the 3500 material related to, skipping ahead, Ileani Bias. And what did her 3500 material contain? This exact vignette that we're talking about. So they clearly had notice, and I think that bears on an important issue in this case, which is harmlessness, because it's not only harmless given the quantum of other evidence of the appellant's guilt. It's also harmless because it's not clear what they would have done had they had a little bit more notice or more formal notice. I think in the defense brief, they say, well, we could have potentially identified hearsay. None of the things that were said by Ms. Bias were hearsay. Statements of future intent to work with someone is not hearsay under 8033. A statement against interest saying, I'm going to do a drug deal with someone is not hearsay. And frankly, we think that's a pretty thin reed on which to overturn a verdict. It's also- The only defect is the notice, but if it was an error to admit it, then that obviously would make a difference, right? I don't think I understand your question. Obviously, we think whether it was an error to admit it or not, harmlessness still comes into play. But obviously, we contend that the court did not abuse its discretion here and also that it was harmless both because there was actual notice. And the only thing that really distinguishes 404B admission from direct is you get a jury instruction and you get notice. Well, here they got a jury instruction. That was something they requested. And frankly, we consented to and even mirrored in our closing statement. We instructed the jury, don't use this to show how these people know each other. He's not on trial for drug dealing. So I think both the trial court and the government in this case were trying to be judicious with this evidence. So why is it harmless based on the quantum of evidence? So we have a video, admittedly, but you also have somebody who appears in the video standing right next to the shooter who says, I know this defendant, and I was standing right there, and I don't recognize him. Yes, Your Honor. So why isn't the evidence equivocal on whether he actually is the person in the video? Yes, Your Honor. So the evidence was far more than that. I think we have evidence that there are two witnesses identifying him on the video, as we've talked about. I think my friend on the other side tries to minimize their testimony. Detective Gugelberger had seen the appellant over a dozen times over a period of 12 years, had been studying him from police databases. He was very familiar with him and his appearance. Ms. Baez obviously had a very vivid meeting with him. And beyond that, the witness, Your Honor, identifies Thomas Hunter. He gave transparently perjurious testimony to the point that counsel for the defendant at trial had to stipulate that something he said was untrue. And outside the presence of the jury, the district court said that it was, quote, preposterous testimony. That's in Appendix 221. So I think you have to contextualize this eyewitness with what it really was. I think the jury was free to infer and could fairly infer this was someone lying to cover for the defendant. But even beyond that, you have evidence of the defendant possessing the same caliber ammunition in videos from his iCloud account, and you have the video which shows his car coming. There's license plate reader records from an NYPD vehicle that found his car at the scene of the crime just moments before, about a block away. And on the video itself, you have... I think Ms. Goldblatt just said that she acknowledges that it was his car. Fair enough. Fair enough. I don't know. Maybe that's a big admission. I guess you would think that was pretty strong evidence that his car was there. It is strong evidence to the point that when the district court rejected the Rule 29 motion, it noted the car specifically. It said it was, quote, very compelling. So I think that was even before the perjurious testimony that we think plainly hurt the defense case in this case. But also the video itself, the defendant is a pretty distinctive-looking person. He's short. He wears his hat in kind of a unique way that witnesses referred to. He has a kind of interesting way of walking. This was not, like, just Joe Schmo on the street. And witnesses like Omar Garab testified that if they knew him, they could recognize him. Of course, that also goes with Ms. Baez and Mr. Gugelberger's testimony. Well, assuming that goes to the weight rather than whether the evidence should have been admitted or not, I do want to get back to the point of notice under 404B. Sure. Well, I understand your argument that they may have had actual notice to what Ms. Baez was going to testify to. But you don't stand there and disagree that the better practice for the prosecution in the U.S. Attorney's Office would be to notice 404B evidence ahead of schedule, ahead of the trial, so that both the defense and the court has a heads-up of what potential evidentiary issues may be coming its way, correct? You are absolutely right about that. Lesson learned, but we think in the context of this case, there was a clear basis for its admission under direct evidence. And given the other evidence, it is harmless. I see I'm out of time. If Your Honors have any further questions, I'm happy to answer them. Thank you, counsel. Thank you. I'm waiting for the clock. Does it reset? Two minutes. Here we go. I want to address the harmlessness of lack of notice, because that's always going to be a really hard one to show, right? So you don't give notice that you're going to elicit evidence from somebody that your defendant's involved in a drug deal. And this was not just a – if any lesson was learned, it was this is a great way to get convictions, because it's almost impossible to prove harm. They knew that they were blindsiding this defendant, and here's how we know. Because they didn't put in their opening that, and by the way, she's going to testify that the way she knew him was involved in a drug deal. And then as they said in their closing, and that's the real heart of this case, right? If they wanted to give notice. Well, that would be foolish for them to do that in an opening statement, not knowing whether the court would allow that or not. And a judge would sustain an objection to that and give an instruction. I mean, opening statements, you have to be cautious what you're going to promise the jury. That is exactly my point. Right. But in response to that, was your opponent inaccurate in noting that the 3500 material that was turned in, the way she saw Mr. Edwards and the content of that meeting? It included all sorts of things that weren't admissible. Many, many things were in that notice that were not admissible, including that. And the defendant had the right to believe that the inadmissible materials would not be offered in the middle of trial. And they were inadmissible, among other reasons, because there was no notice. And the burden is not on you, to be clear. The burden is not on the defense. But the defense could have filed a motion in limine to say, hey, judge, she's on the witness list. We have her 3500 material. We're filing a motion in limine. She can talk about how much she loved the victim, how long they lived together, how many children they had. But we're moving to preclude this. Right? And the burden is not on the defense to be clear. No, I want to address that, because there are contexts where I think that would have been a practice that someone would do. But in this context, there had actually been a motion in limine to admit firearms evidence, in which the prosecutor acknowledged that narcotics evidence was not within the scope of what would be admitted, and specifically cited all the cases that point out how prejudicial it is, and promised to omit, O-M-I-T, any videos like that. Now, in the context of having received that notice, to say that the defense was on notice, that the prosecution intended to admit those materials, I think is distorting. And I don't think that's a way to see it. And I also want to just give, let's talk about hypothetically why notice matters. Notice matters because the first reaction to hearing evidence come into a jury is not necessarily the best reaction for strategy. And what the defense counsel did in this case was classic, initial response that should never have happened, which was to challenge it. No, that's not true. As opposed to, if he'd had time to think, don't challenge it, that opens the door to corroboration, and we know there's these videos. It's a reflex, and it's a reflex that happens when you don't have notice. Then he makes a second mistake, which is he doesn't have any theory in his mind or any story that he can tell about how this evidence is good. He doesn't have time to come up with a narrative to turn it around. Now, one narrative that I use with this court is that they don't mostly, people don't mostly kill people in their own organization. These are gun battles that involve people in external organizations. Was it a stretch for him to think that that was the government's theory, that this was a business relationship that went awry, and to not anticipate that? Because I thought his defense, it's not me. Yeah, his defense was it's not you. If that's the defense, then you can anticipate. You'd say, look, I may be dealing drugs. I may have made bad decisions, but that's not me. I didn't do this. Now we're into multiple problems with the ID, because the issue is she's identifying a person she saw once and saying it's the defendant, and identifying someone in the video and saying it's the defendant. The defendant can say, that was me, but not me in the video. So he says, yeah, that was me that she saw in the apartment, and I'm good friends with this guy, and we work together. We're on the same side. I don't know who killed him. Probably someone from a rival gang, right? So once the narcotics evidence is coming in, there's a whole different way of running the case, right? So when we evaluate homelessness, we evaluate whether in the absence of the error it would have made a difference to the jury would have reached the same results. So I get the arguments on harmlessness if all of the narcotics evidence shouldn't have come in at all. Then we think about whether that's harmless. But you're saying even the notice by itself was harmful because the defense counsel didn't have the opportunity to develop an argument that they loved each other because they were dealing drugs together and so you wouldn't have shot him? Any argument that incorporates the narcotics evidence, any argument that explains it and gives the jury a story other than these are the kind of people who shoot each other up, you know what they're like. He had no opportunity. Prosecutor had that opportunity. He knew it was coming. He knew what he was going to do. Defense counsel didn't. And that's the violation here. And like you said, it's very hard to do a harmlessness analysis on that basis. We do have to think about this. Do you really think that that would have persuaded the jury to reach a different result? At this point, this is why I think procedural problems are very hard to do a harmlessness analysis on. What would have happened under a different procedure? You don't think it's a structural error, like an evidentiary admission or a lack of notice is not a structural error. We do review it for harmlessness. I don't think there's been a finding that it's structural error. I think it's almost impossible to do a harmlessness analysis on it, and I think for that reason it should be because it is part of the structure of how the trial is supposed to go. But it's not. So let's talk about what a harmlessness analysis would look like. How do you do a harmlessness analysis on a procedural violation? If you're stuck, maybe that's a reason it should be structural, right? But if you're not, one way is can you imagine a story, any trial that would have been different than this one? It seems to me that the way you would evaluate it is you take into account the argument you just said that defense counsel could have presented had he had notice, and I evaluate whether that would have been persuasive to the jury given all the other evidence at trial. It's not whether it would have been persuasive. That's not hard to do. That's the kind of classic harmlessness analysis. That's not the standard, though. The standard is whether it would have made a difference. And so you're talking now about a totally different narrative at trial, right? Just a different story happening, a different series of evidence coming in, and how do you tell how that's going to go? What was the defense's theory of the case? It wasn't me, and by the way, we're friends. No, there was no and we're friends. Was there any mention, if we go back and read the opening statement, that they knew each other or this was a stranger? He's a stranger to me. I didn't know him, and that's not me in the video. No, there was no implication that the defendant was going to testify. So there was no. No, but there has to be. Whether or not the defendant testifies, this defense has a theory, and the theory is, ladies and gentlemen, the government will not be able to carry its burden of proof to prove beyond a reasonable doubt that my client committed the offense or offenses he's charged with. You will hear testimony, but what you will see we submit to you is that he was not there. It was not him. And usually there's a narrative. They're friends, and he had no motive. You will hear that he had no motive to commit this offense because they're friends. No, there was no such argument because at that point there was no evidence that the Commonwealth was going to offer that the defendant was aware of that he thought would be admissible, that there was any relationship between them. There was just the fact that a year ago she had seen him at her house or thought she had. No, I'm all I'm asking. She lived with the guy, right? She lived with the victim, and she thought she had seen the defendant at her house. I was just asking what the nature of the opening statement argument is. It wasn't him, and they've basically framed this guy based on the fact that Simone used a scarf. Like there's not framed him, but the sense that this is, you can look at the video, you'll see it's not him. Jury, there's going to be a video. Look at it, you'll see it's not him. That was the theory of the case. There was no attempt to address narcotics or narcotics dealing in the opening because there had been a statement that it would be omitted. So the entire theory just ignored the fact, the entire opening ignored the fact.  You've answered my question. Thank you, counsel. Thank you both. We'll take the case under advisement.